IN RE the MARRIAGE OF: Daniel L. LaROCQUE, Petitioner-Respondent,

v.

Rosalie E. LaROCQUE, Appellant-Petitioner. [Case No. 85–0919.]

IN RE the MARRIAGE OF: Daniel L. LaROCQUE, Petitioner-Respondent,

v.

Rosalie E. LaROCQUE, Appellant. [Case No. 85–2197.]

Supreme Court

*Nos. 85–0919, 85–2197. Argued February 6, 1987.—Decided June 10, 1987.*

(Also reported in 406 N.W.2d 736.)

For the appellant-petitioner there were briefs by *Linda S. Balisle* and *Stolper, Koritzinsky, Brewster and Neider, S.C.,* Madison, and oral argument by *Linda S. Balisle.*

For the petitioner-respondent there was a brief by *DeBardeleben and Snyder,* Park Falls, and oral argument by *Arthur DeBardeleben.*

SHIRLEY S. ABRAHAMSON, J. Two cases are before this court arising out of the divorce of Daniel and Rosalie LaRocque. One is a review of an unpublished decision of the court of appeals filed December 27, 1985, affirming in part and reversing in part a judgment of the circuit court for Marathon county, Andrew P. Cotter, Reserve Judge. The second is an appeal from an order of the circuit court for Marathon county, Andrew P. Cotter, Reserve Judge. The appeal is before this court on a petition to bypass. Sec. (Rule) 809.60, Stats. 1985–86.

The first of the cases involves a circuit court judgment entered April 2, 1985, granting Daniel LaRocque a divorce, dividing the property between the

parties, and awarding Rosalie LaRocque limited term maintenance of $1500 per month for 5 months and then $1000 per month for 13 months. The court of appeals affirmed the circuit court's decision on the amount but not on the duration of maintenance, concluding that the circuit court abused its discretion in terminating maintenance at the end of the 18 months, that is, as of June 1986. The second of the cases involves a circuit court order entered on October 30, 1985. The order denied Rosalie LaRocque's post-judgment motion to revise the maintenance award and granted her a contribution of approximately 20% of her appellate attorney's fees.

The determination of the amount and duration of maintenance is entrusted to the sound discretion of the circuit court, and this court will not disturb the determination of the circuit court unless the circuit court abuses its discretion. As we have so often cautioned, however, "[T]he exercise of discretion is not the equivalent of unfettered decision-making .... [A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981); *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 313 N.W.2d 813 (1982).

For the reasons set forth below, we conclude that the circuit court abused its discretion in setting the amount and duration of the maintenance award. Accordingly, we affirm the part of the court of appeals decision that reversed the circuit court's judgment limiting the duration of maintenance to eighteen months; we reverse the part of the court of appeals

decision that affirmed the circuit court's judgment setting the amount of monthly maintenance. Because the circuit court order on modification of maintenance and appellate attorney fees is related to the maintenance award, we vacate the circuit court order, and we remand the cause to the circuit court for further consideration and for the exercise of discretion guided by law.

## I.

Daniel and Rosalie LaRocque were married in 1959; they filed for divorce in 1982. When the divorce was granted in 1984, Mrs. LaRocque was 46 years old, Mr. LaRocque was 48, and only one of the LaRocques' five children was still a minor (age 17).

Mrs. LaRocque received a bachelor's degree in psychology in June of 1959. During the first two years of the marriage, she held several full-time positions including secretary, clerk and teacher. Thereafter, she worked outside the home sporadically, as a part-time substitute teacher and as a member of the school board. At the time of the divorce she was not certified to teach in a public school. During the marriage, her principal occupation was as a full-time homemaker and caretaker of the parties' five children. She also assisted Mr. LaRocque in his various election campaigns. Her total income from employment outside the home during the marriage amounted to $5,660.

Mr. LaRocque received a law degree in 1962. During the marriage he was employed as a lawyer in private practice, an assistant district attorney, a district attorney for Marathon County, and a circuit court judge. In 1984 he was appointed judge of the Wisconsin Court of Appeals. When the divorce action

was commenced, his annual income was $49,966; when the divorce was granted, his annual income was $60,000. His earnings during the marriage totaled $548,987. The family annual income had increased from $1763 in 1959 to $50,235 in 1980 and $60,000 at the time of the divorce.

Neither party brought any property of significant value to the marriage. The largest assets at the time of divorce consisted of the family home, having a stipulated value of $74,431, subject to two mortgages totaling $40,000, for a net value of $34,431, and Mr. LaRocque's retirement fund, which the circuit court determined had a vested value of $54,340. Although substantial in amount, the unvested portion of the retirement fund was not considered in the property division or awarding of maintenance.

The circuit court divided the property, awarding Mrs. LaRocque the household furniture and appliances ($4043), the family car ($2000), the parties' income tax refund ($3000), and the family home subject to the two mortgages (net value $34,431), for a total value of $43,474. Mrs. LaRocque had foreseeable future expenditures for house repairs, broker's fees and taxes on the sale of the house, 1984 property taxes, and legal fees. Mr. LaRocque was awarded the retirement fund with the vested portion valued at $54,340.

During the separation period Mr. LaRocque paid the family bills of over $1600 per month and paid Mrs. LaRocque $372 every two weeks. Mrs. LaRocque submitted several budgets for expenses in maintaining herself and the children living at home; the budgets ranged from $1654 to $2317 per month. She testified that her standard of living had declined over the two-year separation and that she could not meet

her minimum existing expenses on less than $1654 per month, exclusive of property and income taxes and the second mortgage payment. Mr. LaRocque submitted no budget; he listed $225 per month as an apartment rental expense.

In awarding maintenance, the circuit court found that Mrs. LaRocque could work as an elementary school teacher upon certification and that the entry level salary for elementary school teachers in the Wausau district was $12,000 a year and the average salary $25,000 a year. The circuit court further found that Mrs. LaRocque's present earning capacity was between $12,000 and $15,000 per year and her future earning capacity was at least $25,000 per year. The circuit court concluded that the entry level salary upon her certification as a teacher would provide Mrs. LaRocque with a standard of living reasonably comparable to the one enjoyed during marriage inasmuch as the parties' median annual income during the marriage was approximately $18,000 and the average annual income was $20,000 and as many as five children shared that income during the marriage. Thus, according to the circuit court, as an entry level teacher Mrs. LaRocque could earn more than one half of the average annual income during marriage.

The circuit court's memorandum decision explained that the 18 months' maintenance it awarded would enable Mrs. LaRocque to take whatever schooling she deemed appropriate to enhance her earning ability. It went on to say that after the last child reached majority Mrs. LaRocque could sell the house and, with the proceeds from the sale, pursue whatever course she thought would produce an adequate income.

The circuit court also acknowledged that Mr. LaRocque had indicated he would continue to provide for the children who would be going to college and that Mr. LaRocque did not have liquid funds available from the retirement fund.

Thus the circuit court arrived at a maintenance award of $1500 per month for 5 months and then $1000 per month for 13 months. Mrs. LaRocque appealed, arguing that both the amount and duration of the maintenance award were inadequate. The court of appeals affirmed the amount of the award, concluding that the awards of $1500 and then $1000 per month were not an abuse of discretion in light of the median and average annual incomes of the family during the marriage; Mr. LaRocque's intent to provide for children who went to college; and Mr. LaRocque's lack of liquid assets. The court of appeals concluded, however, that the termination of maintenance after eighteen months was not supported by the record and was an abuse of discretion. Accordingly, the court of appeals reversed that part of the judgment which terminated maintenance payments after June 1986.

## II.

A circuit court determining a maintenance award and an appellate court reviewing a maintenance award must begin with sec. 767.26, Stats. 1985–86, which provides that the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1) The length of the marriage.
(2) The age and physical and emotional health of the parties.

(3)   The division of property made under sec. 767.255.

(4)   The educational level of each party at the time of marriage and at the time the action is commenced.

(5)   The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6)   The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7)   The tax consequences to each party.

(8)   Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9)   The contribution by one party to the education, training or increased earning power of the other.

(10)   Such other factors as the court may in each individual case determine to be relevant.

These factors are the touchstone of analysis in determining or reviewing a maintenance award. They

reflect and are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective). See, *e.g., Bahr v. Bahr,* 107 Wis. 2d 72, 83, 318 N.W.2d 391 (1982); *Lundberg v. Lundberg,* 107 Wis. 2d 1, 12–13, 318 N.W.2d 918 (1982); *Roberto v. Brown,* 107 Wis. 2d 17, 22, 318 N.W.2d 358 (1982); *Steinke v. Steinke,* 126 Wis. 2d 372, 376 N.W.2d 839 (1985).

Several of the nine statutorily enumerated factors relate predominantly to determining the needs and earning capacities of the parties, that is, to the support objective of maintenance. Others compensate the recipient spouse for contributions made to the marriage, give effect to the parties' financial arrangements, or prevent unjust enrichment of either party; these relate to the fairness objective. Some statutory factors seem to relate to both objectives of maintenance.

The circuit court has the difficult task of applying these factors, individually and in their totality, to ascertain how best to achieve the underlying objectives of maintenance. The circuit court must convert statutory factors into dollar amounts and length of time.

## III.

We conclude that the circuit court abused its discretion in this case by misapplying (or failing to apply) several of the statutory factors and by not giving full play to the objectives of maintenance. By

construing the support objective too narrowly and disregarding the fairness objective, the circuit court mistook subsistence to be the objective of maintenance and awarded an inadequate amount.

The circuit court offered three principal reasons for concluding that Mrs. LaRocque needed only $1500 per month for 5 months, to be reduced to $1000 per month for 13 months after the minor child graduated from high school: (1) Mrs. LaRocque would eventually have the proceeds of the sale of the house available to her; (2) the award comports with the standard of living of the parties; (3) Mr. LaRocque might pay college expenses for their adult children. Examining each of the circuit court's reasons, we do not find these reasons persuasive.

■

While the circuit court should consider the property division in awarding maintenance, sec. 767.26 (3), we disagree with the circuit court's implication that Mrs. LaRocque use the proceeds from the sale of the house, her share of the property division, to support herself. The circuit court suggested that Mrs. LaRocque use the proceeds "to determine the course she wishes to take to earn what she believes to be a proper income." Even if this is only a suggestion that Mrs. LaRocque pay for her training out of the proceeds, it is still a suggestion that she use the proceeds for support purposes. Sec. 767.26 (5).

It is difficult to understand why, and the circuit court does not explain why, Mrs. LaRocque should liquidate her capital to obtain funds to pay living and retraining expenses, while Mr. LaRocque retains full use of his $60,000 a year salary and keeps his retirement fund (the property he received in the property division) untouched and secure for his retire-

ment years. The property division should provide Mrs. LaRocque as well as Mr. LaRocque with a nest egg for retirement or a reserve for emergencies.

■ While sec. 767.26 (6) requires the circuit court to consider the parties' pre-divorce standard of living in awarding maintenance, we disagree with the circuit court's application of this statutory factor. Sec. 767.26 (6) requires the circuit court to consider the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage and the length of time necessary to achieve this goal if the goal is feasible. The legislature thus has expressly declared that the standard of living for maintenance is a standard of living comparable to the one enjoyed during the marriage. In other words, the goal of maintenance is to provide support at pre-divorce standards, and this goal may require that the recipient spouse be awarded maintenance above bare subsistence needs. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 228, 313 N.W.2d 813 (1982).

The increased expenses of separate households may prevent the parties from continuing at their pre-divorce standard of living, but both parties may have to bear the sacrifices that the cost of an additional household imposes. A court must not reduce the recipient spouse to subsistence level while the payor spouse preserves the pre-divorce standard of living. In this case, while Mrs. LaRocque's budgets were unchallenged, the circuit court implicitly rejected them and awarded limited term maintenance in an amount less than the lowest monthly budget Mrs. LaRocque submitted.

The circuit court determined the parties' pre-divorce standard of living to be $20,000 per year. The circuit court reached the $20,000 figure by dividing the total income earned during the marriage by the number of years the parties were married. The circuit court apparently concluded that if the family as a whole had enjoyed a $20,000-a-year standard of living, Mrs. LaRocque living alone could enjoy a reasonably comparable standard of living on $12,000 a year. Accordingly, the court awarded Mrs. LaRocque $1000 a month in maintenance for a year, after which she could support herself on a $1000-a-month salary the court assumed she would earn as an entry level teacher.

We are perplexed by the circuit court's figure of $20,000 a year. The parties' annual income had been greater than $20,000 for the last 11 years of the marriage. At the time of the divorce it was $60,000. We believe that a reasonable maintenance award is measured not by the average annual earnings over the duration of a long marriage but by the lifestyle that the parties enjoyed in the years immediately before the divorce and could anticipate enjoying if they were to stay married. The divorce in this case occurred when the children were grown, with only one child under 18 years of age, and when the husband's income was increasing and expenses were possibly decreasing. The couple had reached the stage in life at which they could enjoy a standard of living for which they both had strived.

The circuit court's final reason for limiting Mrs. LaRocque's maintenance was that Mr. LaRocque had stated he would help pay the college expenses of the

adult children. Apparently the circuit court considered this factor relevant under sec. 767.26 (10). We find it difficult to understand why in awarding maintenance the circuit court credited Mr. LaRocque's payment of college expenses for adult children—particularly when such payment is unstipulated and as yet unrealized—but did not consider the expenses Mrs. LaRocque incurred by having adult children live with her.

We conclude that the circuit court erroneously applied the statutory factors in considering the support objective of maintenance. The circuit court erred by taking too narrow a view of Mrs. LaRocque's needs and too expansive a view of her earning potential (as we discuss further below).

In regard to fairness, the other objective of a maintenance award, the circuit court appears not to have given any weight at all to this objective of maintenance or to such statutory factors as the length of the marriage, the educational level of each party at the time of the marriage and the time of the divorce, and the contribution by one party to the education, training or increased earning power of the other.

Where a spouse has subordinated his or her education or career to devote time and energy to the welfare, career or education of the other spouse or to managing the affairs of the marital partnership, maintenance may be used to compensate this spouse for these nonmonetary contributions to the marriage. In adopting the 1977 Divorce Reform Act the legislature stated that it intended that "a spouse who has been handicapped socially or economically by his or her contribution to a marriage shall be compensated for such contributions at the termination of the marriage, insofar as this is possible, and may receive

additional education where necessary to permit the spouse to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage." 1977 Wis. Laws, c. 105, sec. 1.

The LaRocques were married for 25 years. Both parties contributed to the marriage. The record is replete with evidence of Mrs. LaRocque's contributions to Mr. LaRocque's education and increased earning power. Because the wife's contribution in this marriage was as homemaker and the husband's as wage-earner, the husband leaves the marriage with the "asset" of a stream of income which the wife's contributions helped him to develop. The wife, however, does not leave the marriage with a stream of income; a career as homemaker—although of economic value to the family and society—all too frequently does not translate into money-making ability in the marketplace. Because the parties had accumulated some but not a great deal of property during their marriage, the court in this case cannot rely on the property distributed to the wife to "compensate" her for her contribution to the marriage and her loss of a stream of income.

The maintenance award produced a substantial disparity between the post-divorce incomes of the parties. Mrs. LaRocque was granted maintenance for 18 months and probably can earn $1000 per month as long as she can work. Within 18 months of the divorce Mr. LaRocque will have the use of his entire income of $60,000 per year or $5000 per month and his full retirement funds without any further obligation to support Mrs. LaRocque. The circuit court did not consider whether this result satisfied the fairness objective of maintenance.

This court has said that when a couple has been married many years and achieves increased earnings, it is reasonable to consider an equal division of total income as a starting point in determining maintenance. See, *e.g., Bahr v. Bahr,* 107 Wis. 2d 72, 318 N.W.2d 391 (1982); *Steinke v. Steinke,* 126 Wis. 2d 372, 376 N.W.2d 839 (1985). Over a long marriage the parties each contribute to the stream of income as marital partners and should share the rewards. As this court put it in *Bahr:*

> "'It would seem reasonable for the trial court to begin the maintenance evaluation with the proposition that the dependent partner may be entitled to 50 percent of the total earnings of both parties. This percentage may, as in the case of property division, be adjusted following reasoned consideration of the statutorily enumerated maintenance factors. We would stress, however, that while this starting point is important, it is not the determinative factor which controls the ultimate award. For, "[i]t is the equitableness of the result reached that must stand the test of fairness on review," and such a result requires a reasoned starting point adjusted to reflect thoughtful consideration of other important factors.' *Bahr v. Bahr,* 107 Wis. 2d 72, 84–85, 318 N.W.2d 391 (1982). (Citation omitted.)" Quoted with approval *Steinke v. Steinke,* 126 Wis. 2d 372, 379, 376 N.W.2d 839 (1985).

If the circuit court had considered the fairness objective of maintenance and had applied the *Bahr-Steinke* standard of starting at an equal division of income of the parties in this case, the starting figure of the maintenance award would be $2500 per month, a

figure consistent with Mrs. LaRocque's highest budget figure.

Considering both the support and fairness objectives of maintenance, we are left, to repeat what we said in *Bahr,* with the nagging question of why $1500 and $1000 per month are proper maintenance awards under sec. 767.26 and the facts and circumstances of this case. The circuit court did not answer this question satisfactorily, and therefore we conclude that the circuit court abused its discretion. We reverse the decision of the court of appeals regarding the amount of maintenance, and we remand this matter to the circuit court.

## IV.

The circuit court has to consider the statutory factors enumerated in sec. 767.26 to determine whether to award limited or indefinite maintenance. The circuit court's determinations of the amount of maintenance and the duration of maintenance are intertwined. We agree with the court of appeals that the circuit court's judgment terminating maintenance after 18 months is not supported by the record and is an abuse of discretion.

Limited maintenance has many purposes, and we do not enumerate them all. It provides a recipient spouse with funds for training that may lead to employment. It may be an incentive for a recipient spouse to seek employment. It limits the responsibility of the payor spouse to a time certain and thus avoids a future relationship between the parties and litigation relating to the modification and enforcement of maintenance.

In determining whether to grant limited-term maintenance, the circuit court must take several considerations into account, for example, the ability of the recipient spouse to become self-supporting by the end of the maintenance period at a standard of living reasonably similar to that enjoyed before divorce; the ability of the payor spouse to continue the obligation of support for an indefinite time; and the need for the court to continue jurisdiction regarding maintenance.

Because limited-term maintenance is relatively inflexible and final, the circuit court must take particular care to be realistic about the recipient spouse's future earning capacity. The circuit court must not prematurely relieve a payor spouse of a support obligation lest a needy former spouse become the obligation of the taxpayers.

In this case, in awarding limited-term maintenance the circuit court considered, as it was required to consider under sec. 767.26(5), Mrs. LaRocque's earning capacity and her ability to become self-supporting. The circuit court apparently concluded that the limited-term maintenance award was adequate to enable Mrs. LaRocque to become self-supporting at a standard of living similar to that enjoyed before the divorce.

Mrs. LaRocque acknowledged that she could get a $12,000-per-year job but she believed such a job would not provide advancement or career possibilities. Because $12,000 was inadequate to meet her budget, she asked for maintenance sufficient to retool herself for a job with career potential, job satisfaction and greater earnings so that she could become self-supporting at the pre-divorce standard of living. Although Mrs. LaRocque had expressed interest in a career as a

psychologist, the circuit court considered only a career as a teacher.

The circuit court apparently determined the length of time it would take Mrs. LaRocque to acquire certification to teach, the expenses of earning the certification, the likelihood of her obtaining employment in Wausau, and the time it would take her to earn $25,000 per year starting at the low end of the pay scale, but it did so on the basis of conjecture, not facts. Without facts of record, the court assumed that a woman in her mid-forties who had been a full-time homemaker for more than twenty years could readily enter the job market and within 18 months of the divorce support herself at a pre-divorce standard of living.

Like the court of appeals, we conclude that nothing in the record indicates whether Mrs. LaRocque would be certified and employable as a teacher within 18 months, whether teaching jobs were available in Wausau, whether there was a good likelihood she would be hired and, if so, how long it would take her as an entry level teacher to reach the salary of $25,000. Without such facts the circuit court could not appropriately award limited-term maintenance. Accordingly, we conclude, as did the court of appeals, that the circuit court abused its discretion in awarding limited maintenance for 18 months. We therefore affirm that part of the court of appeals decision remanding the issue of the duration of maintenance.

V.

In regard to the circuit court order on modification of maintenance and attorney fees, we vacate the

order because the issues of modification of maintenance and attorney fees are intertwined with the original judgment. The circuit court should consider modification and attorney fees when it reconsiders maintenance.

One matter remains. Mrs. LaRocque requests this court not to remand the issue of maintenance to the circuit court. She asks us to direct the circuit court to enter an order awarding her maintenance of $2000 per month for an indefinite time or $2500 per month for 10 years, plus costs and fees for this appeal. Although either of these proposals may be appropriate, we conclude that we cannot and should not exercise the discretion which is properly the circuit court's.

For the reasons set forth, we affirm that part of the decision of the court of appeals remanding the issue of the duration of maintenance to the circuit court and reverse that part of the decision of the court of appeals affirming the circuit court's judgment regarding the amount of monthly maintenance. We vacate the order of the circuit court relating to modification of maintenance and attorney fees. We remand the issue of maintenance and appellate attorney fees to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part; the

order of the circuit court is vacated; the cause is remanded to the circuit court.

JUSTICE WILLIAM A. BABLITCH did not participate.