IN RE the MARRIAGE OF: Mary Louise KILDEA, Petitioner-Respondent,

v.

John KILDEA, Jr., Appellant.

Court of Appeals

*No. 87–0956. Submitted on briefs December 9, 1987.—Decided January 13, 1988.*

(Also reported in 420 N.W.2d 391.)

[redacted]

On behalf of the appellant the cause was submitted on the briefs of *Robert C. Hahn,* of Sheboygan.

On behalf of the petitioner-respondent the cause was submitted on the brief of *Eugene F. Hodson* of *Hopp, Hodson, Powell & Raftery,* of Sheboygan.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. John Kildea, Jr. appeals from the property division and maintenance provisions of a divorce judgment. He argues that the trial court lacked jurisdiction to divide his military pension because he did not consent to the division. We conclude that because John never objected to personal jurisdiction, he consented to the jurisdiction of the court; no further consent was necessary. He also challenges the maintenance awarded to Mary Kildea as being manifestly unjust. We conclude that the amount of maintenance was within the discretion of the trial court, and we affirm.

John and Mary Kildea met in Puerto Rico in 1962 while both were members of the Armed Forces. Prior to their marriage in 1963, Mary resigned her commis-

sion as a first lieutenant. She earned substantially all of the income while John attended nursing school. After John received his three-year diploma, he was the principal income producer and Mary worked part-time. John continued to attend college at various times during the marriage and eventually received a bachelor's degree in nursing and worked towards a master's degree in business administration.

Mary has not worked as a registered nurse since her move to Wisconsin in 1983, despite having maintained her license. She testified that she lacked confidence in her nursing skills and felt she had not kept up with medical advances. She expressed a desire to work in hotel management or food services and is currently employed as a hostess at a supper club.

Five children were born to the marriage, four of whom survived. One child was a minor at the time of the divorce hearing.

Mary petitioned for divorce while John was residing in Maryland as a member of the Armed Forces. He admitted service, responded to the petition, and he and his counsel appeared in the action without limitation. Additional facts will be stated as necessary.

John argues that the trial court "lacked the power" to divide his military pension. Congress granted state courts limited authority over military pensions in 10 U.S.C. sec. 1408 (1983), which provides in part:

> (c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member

and his spouse in accordance with the law of the jurisdiction of such court.

. . . .

(4) A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless *the court has jurisdiction over the member by reason of* (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) *his consent to the jurisdiction of the court.* [Emphasis added.]

It is undisputed that neither John's residence nor his domicile is in Wisconsin. Therefore, the court can divide the disposable retired pay under Wisconsin law only if John "consent[s] to the jurisdiction of the court."

John admits that the trial court had personal jurisdiction over him. He argues, however, that the trial court lacked the "power" to divide the pension. John points to the statutory language that the court must have jurisdiction "by reason of" his consent. He contends that the court's jurisdiction over him was "by reason of" the service of summons, not "by reason of" his consent. He also argues that he never consented to the court's division of the pension.

The trial court found that John had consented to jurisdiction by his admission of service, his counsel's general appearance, his own general appearance, and his response asking for affirmative relief. John challenges this finding by asking the rhetorical question: "How obstreperous and obstructive must the respondent be in regard to service of a summons upon him in order not to risk an accusation that he has 'consented'?"

John confuses consent to service of a summons with consent to personal jurisdiction. Our answer to his question is that he does not have to be obstreperous, obstructive or even elusive. To avoid "consenting" to the jurisdiction of the court, he must merely object to jurisdiction.

> It is well settled in this court that if a litigant desires to avail himself of want of jurisdiction of his person he must keep out of court for all purposes except that of objecting to jurisdiction, or, what is the same thing, moving to dismiss on that ground. If he takes any step consistent with the idea that the court has jurisdiction of his person, such appearance amounts to a general appearance and gives the court jurisdiction for all purposes.

*Stroup v. Career Academy of Dental Technology-Washington, D.C., Inc.,* 38 Wis. 2d 284, 288, 156 N.W.2d 358, 360 (1968). Thus, although service was one of the steps taken to obtain jurisdiction, John still had the opportunity to object to jurisdiction by responsive pleading or motion. *See* sec. 802.06(2)(c), Stats.

Here, John made no objection regarding jurisdiction over his person. In fact, he repeatedly concedes that personal jurisdiction was present. He relies instead on nuances in the statute to build an argument that although personal jurisdiction was *generally* present, the court lacked the *specific* jurisdiction to divide the pension because he did not agree to the division. We conclude that his argument is not supported by the clear language of the statute.

Construction of a statute is a question of law, reviewed without deference to the trial court's conclusion. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166,

361 N.W.2d 673, 677 (1985). Where the language is clear and unambiguous, the statute must be given its plain meaning. *See id.*

The applicable statute, 10 U.S.C. sec. 1408(c)(4), only requires consent to the jurisdiction of the court, not consent to the court's authority to divide the pension. Had Congress intended specific consent to be a requirement, it would have been a simple matter to draft the statute to do so. By drafting it as Congress did, the statute curtails "forum shopping" by the nonmilitary spouse, *see Southern v. Glenn,* 677 S.W.2d 576, 583 (Tex. Ct. App. 1984), but does not give an absolute "veto power" to the military spouse.

We conclude that 10 U.S.C. sec. 1408(c)(4) is clear on its face and that consent to personal jurisdiction is sufficient to give the court authority to divide the pension. We decline to adopt the strained interpretation urged by John.

Other jurisdictions have likewise concluded that a general appearance is tantamount to consent to the court's jurisdiction for all purposes, including division of the military pension. *See, e.g., In re Marriage of Jacobson,* 207 Cal. Rptr. 512 (Ct. App. 1984); *Seeley v. Seeley,* 690 S.W.2d 626 (Tex. Ct. App. 1985). We conclude that John's general appearance and failure to timely object to personal jurisdiction gave the trial court the authority to divide his military pension.

John next argues that the maintenance award was manifestly unjust because it was based in part on the disability of adult children. Further, he argues that the award ($1400 per month for two years, $1000 per month for one year, $500 per month until Mary's death or remarriage) amounts to a permanent annuity

contrary to *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 193, 327 N.W.2d 674, 676 (1983).

The determination of the amount and duration of maintenance is entrusted to the sound discretion of the trial court, and we will not disturb the determination unless there is an abuse of discretion. *LaRocque v. LaRocque,* 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987). A discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. *Id.*

The trial court's well-reasoned decision considered a variety of appropriate factors. Although the decision briefly mentions the difficulties experienced by the children, we do not read the maintenance award as being primarily based on this factor.

The trial court considered the length of the marriage, the strain on Mary maintaining a home despite John's absences due to school and duty assignments, and the sacrifice of her ambitions for those of her husband. These facts are strikingly similar to the *LaRocque* case, wherein the supreme court stated:

> Where a spouse has subordinated his or her education or career to devote time and energy to the welfare, career or education of the other spouse or to managing the affairs of the marital partnership, maintenance may be used to compensate this spouse for these nonmonetary contributions to the marriage.

*LaRocque,* 139 Wis. 2d at 37, 406 N.W.2d at 741–42.

Regarding John's argument that the maintenance award is an impermissible permanent annuity, we disagree. Indefinite maintenance is specifically allowed by sec. 767.26, Stats. Furthermore, the supreme court has recognized the factors which must be considered in deciding whether to grant limited or indefinite maintenance. *LaRocque,* 139 Wis. 2d at 40–41, 406 N.W.2d at 743.

The trial court decided that indefinite maintenance was required "because of petitioner's custodial responsibilities for the children during the marriage and her above-normal homemaking duties, all due to respondent's numerous absences during the marriage." The trial court also stated that the award would "ensure petitioner an adequate retirement, which will be a mixture of maintenance, property division and Social Security." The step-down in maintenance over time was because the trial court considered this a "rehabilitative maintenance" which would allow Mary to reacquire job skills and reenter the labor market.

These factors are appropriate and are and supported by the facts. We conclude that the trial court did not abuse its discretion in awarding indefinite maintenance.

John's final contention is that the trial court erred in allowing a high school learning disabilities teacher to testify regarding one child's prognosis. The teacher testified, over objection, that it was her opinion that the minor daughter would need a structured setting—a halfway house—after high school.

The admissibility of opinion testimony, whether by lay witness or expert, is addressed to the discretion

116

of the trial court. *Simpson v. State,* 62 Wis. 2d 605, 609, 215 N.W.2d 435, 437 (1974); *Maci v. State Farm Fire & Casualty Co.,* 105 Wis. 2d 710, 720, 314 N.W.2d 914, 920 (Ct. App. 1981). Given the qualifications of this witness and the limited nature of the testimony, we cannot conclude that permitting the testimony was an abuse of discretion.

*By the Court.*—Judgment affirmed.