In re the Marriage of:

Christopher King, Petitioner-Appellant,

v.

Sonia G. King, Respondent-Respondent-Petitioner.

Supreme Court

*No. 97–0994. Oral argument January 7, 1999.—Decided March 3, 1999.*

(Also reported in 590 N.W.2d 480.)

236

For the respondent-respondent-petitioner there were briefs by *Kristina L. Felber* and *Dowling & Felber, S.C.,* Milwaukee and oral argument by *Kristin L. Felber.*

For the petitioner-appellant there was a brief by *J. Steven Tikalsky, Andrew J. Zbaracki* and *Tikalsky, Raasch & Tikalsky,* Waukesha and oral argument by *J. Steven Tikalsky.*

¶ 1. N. PATRICK CROOKS, J. Sonia King filed a petition for review of that portion of an unpublished court of appeals decision[1] which reversed an order of the Waukesha County Circuit Court. In the order, the circuit court awarded maintenance to Sonia King in conjunction with her divorce from Christopher King. Because the circuit court incorrectly assumed that a spouse has a legal entitlement to maintenance and neglected to base its award on its findings with respect to the factors provided by Wis. Stat. § 767.26

[1] *King v. King,* No. 97–0994, unpublished slip op. (Wis. Ct. App. Apr. 1, 1998).

(1997–98),[2] we conclude that the circuit court erroneously exercised its discretion in making the maintenance award. Accordingly, we affirm the decision of the court of appeals.

¶ 2. Although we affirm the court of appeals, we do not agree with its decision to determine independently whether Sonia King is deserving of maintenance. The correct course of action is to remand the case to the circuit court for an exercise of its discretion. Accordingly, we remand the case so that the circuit court can determine maintenance under the proper legal standards. In light of our decision to remand the case, we decline to address the question of attorneys' fees. The circuit court is free to consider the issue of attorneys' fees upon remand.

## I.

¶ 3. Christopher King and Sonia King were married in 1988. Although the Kings did not have children together, Sonia King has four children from a previous marriage. The children ranged in age from three to nine years when the Kings were married. Throughout the marriage, the children lived with the Kings.

¶ 4. Neither Christopher King nor Sonia King brought property of any significant value to the marriage. During the marriage, Christopher King worked full time as a neurosurgeon and Sonia King did not work outside of the home. Dr. King was completing his medical residency when he married Sonia King and was earning $40,000 per year. By the final year of the marriage, his annual income had increased to $533,000.

---

[2] Unless otherwise indicated, all citations to the Wisconsin Statutes refer to the 1997–98 version.

¶ 5. Sonia King was unemployed from 1982 to November 1994. She was supporting her family on AFDC when she met Christopher King. She did not have her high school diploma and had no education or employment plans at the time of the marriage. Previously, Mrs. King had held various jobs, including a position at a collection agency where she earned $5.00 an hour plus commissions.

¶ 6. On September 12, 1995, Christopher King filed a petition for divorce in Waukesha County Circuit Court. A hearing was held on January 12, 1996, before a family court commissioner. The commissioner entered a temporary order in which he instructed Mrs. King to "make all reasonable efforts to obtain full time employment." Temporary Order, Jan. 12, 1996 at 2.

¶ 7. The three-day trial began on June 11, 1996. The circuit court, Judge Patrick C. Haughney presiding, issued its oral decision on October 22, 1996. First, the court divided the parties' marital estate and debt obligations.[3] The court awarded the Kings' most valuable asset, a Winnebago Way residence and adjoining lot, to Sonia King.[4]

---

[3] The court did not find all of Sonia King's testimony regarding the marital property to be credible. Specifically, in regard to certain items of personal property which could not be located, the court stated:

> [I]n terms of when Mrs. King testified, what emanated from the witness stand was the putrid stench of perjury. And the court finds that based upon her testimony, I believe she did commit perjury. I do not accept what she has to say. What the court finds is that she intentionally destroyed some of Dr. King's property.

Hearing Tr., Oct. 22, 1996 at 9.

[4] The Winnebago Way residence and lot were valued at a total of $253,000 and coupled with a $113,387.54 mortgage. The Kings also had a second residence on Cambridge Avenue. The

¶ 8. Next, the circuit court considered the issue of attorneys' fees. The court indicated that although it seemed that Sonia King should receive some attorneys' fees, "some of this trial was taken up by. . .her wrongdoing in regards to disposing of property." Hearing Tr., Oct. 22, 1996 at 18. Ultimately, the circuit court determined that each of the Kings should be responsible for his or her own attorneys' fees.

¶ 9. Finally, the circuit court considered whether Sonia King should be awarded maintenance. The court noted the dual objectives of maintenance set forth by this court in *LaRocque v. LaRocque*, 139 Wis. 2d 23, 32–33, 406 N.W.2d 736 (1987), and made findings regarding each factor listed by Wis. Stat. § 767.26 (reprinted in full below).[5]

---

Cambridge Avenue residence, valued at $135,000 and subject to a mortgage of $38,565.92, was awarded to Christopher King.

[5] Wisconsin Stat. § 767.26 provides:

767.26 Maintenance payments. Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

(4) The educational level of each party at the time of the marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibility for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably compara-

¶ 10. More specifically, the court found that the Kings' marriage was a short-term marriage. Although the court found Christopher's physical and emotional health to be good, the court stated that Sonia King had "done her best to detract from that." Hearing Tr., Oct. 22, 1996 at 25. The court determined that Christopher King's income was $533,000 per year.

¶ 11. "[E]xtremely street[-]wise" and "very manipulative" were phrases the court used to describe Sonia King. Hearing Tr., Oct. 22, 1996 at 25. The court found that Mrs. King did not have her high school diploma or GED. "[I]nstead of working towards that goal, she chose to appear on the Oprah Winfrey show. That's her choice and she can live her life-style how she wants, but she can't argue out of both sides of her mouth and then expect Dr. King to support her in the life-style that she chooses to live," the court stated. Hearing Tr., Oct. 22, 1996 at 24. The court also said of Mrs. King, "She's chosen to do nothing about obtaining her GED all these years, and I think the lot in life that

---

ble to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

We note that the last legislative change to this statute took place in 1979. See §§ 32–33, ch. 196, Laws of 1979.

she finds herself in is one that she willingly chooses and Dr. King should not have to support." Hearing Tr., Oct. 22, 1996 at 25.

¶ 12. The court determined Sonia King's earning capacity to be $6.60 per hour, or $13,738.00 per year. In addition, the court noted that Mrs. King should be receiving $6,000 in child support per year. Based on Sonia King's earning capacity, the court found that Sonia King would not be able to maintain the lifestyle she had kept up during the marriage.[6] Nevertheless, the court did not find Sonia King's inability to support her pre-divorce lifestyle to be controlling in light of its findings regarding the other factors of Wis. Stat. § 767.26.

¶ 13. Likewise, the court did not find the tax consequences to each party to be a major consideration. The court determined that the Kings had not made any agreements between them as to services rendered by one spouse to the other with the expectation of compensation or reciprocation.

¶ 14. The circuit court spent a fair amount of time discussing the ninth factor listed in Wis. Stat. § 767.26, which is the contribution of one party to the education or increased earning power of the other. *See* § 767.26(9). The court found that the Kings' levels of education and training had not changed since the date of their marriage. The court determined that "Mrs.

---

[6] Earlier in its decision, the circuit court commented on Sonia King's asserted monthly budget of $10,275.61. *See* Trial Tr., June 20, 1996 at 302. The court stated, "Mrs. King has a lot of items in her budget that most working people would not consider not only not necessities, but wouldn't even consider spending the money on. . . .[T]his court, in reviewing the budget of Mrs. King, does not find it helpful. . . ." Hearing Tr., Oct. 22, 1996 at 23.

King's role was primarily that of being allowed to raise her children. . . .I do not find [the] other contributions she made to be extremely significant." Hearing Tr., Oct. 22, 1996 at 28. The court rejected Sonia King's argument that she advanced Christopher King's career by playing "the appropriate social hostess," finding that Mrs. King in fact had not contributed in any significant way to Christopher King's career.[7] Hearing Tr., Oct. 22, 1996 at 21.

¶ 15. After setting forth these findings regarding the statutory factors, the court awarded Sonia King maintenance for three years, in the amounts of $200,000 the first year, $150,000 the second year, and $100,000 the third year. The court explained its award as follows:

> What the court finds here, reiterates again, is based upon the dividing up of this marriage, the disparity in income, that this very high amount of maintenance is appropriate. And despite everything else that I've put on the record, which includes the fact that Mrs. King's life-style is one in which she seems to choose to exercise irresponsibility rather than responsibility, does not change the fact that when two people choose to marry each other that their incomes become divided up and that she legally has the right to expect maintenance, to demand it, and is entitled to it.

[7] The court specifically found that testimony given by Sonia King and two of her friends regarding Mrs. King's volunteer work and social activities was not credible. *See* Hearing Tr., Oct. 22, 1996 at 22.

Hearing Tr., Oct. 22, 1996 at 30. On November 12, 1996, the court filed its written findings of fact, conclusions of law, and judgment of divorce.[8]

¶ 16. On November 27, 1996, Christopher King filed a motion for reconsideration of the maintenance award and the division of debts. Dr. King argued that the maintenance award was excessive in light of the circuit court's findings that the marriage was a short-term marriage and that Sonia King had not contributed to Dr. King's earning capacity or education or to raising any children of Dr. King's. Sonia King moved to dismiss the motion and sought attorneys' fees.

¶ 17. In a hearing on February 25, 1997, the circuit court, again presided over by Judge Haughney, heard and denied the motion for reconsideration. The court pointed out the short term of the maintenance award and stated that when a marriage ends, "the spouse without any earning capacity has a right to expect that there will be some continuation of the type of life-style." Motion Hearing Tr., Feb. 25, 1997 at 13. The court found that because it was dealing with a high-income marriage, it was fair to give Sonia King "a high income level for a short period of time" so that she

---

[8] The court restated its rationale for the maintenance award in its written judgment of November 12, 1996, which states:

> The Court again notes that this is a high maintenance award, but is appropriate, even though Mrs. King's life-style is one in which she seems to choose to exercise irresponsibility rather than responsibility, but that does not change the fact that when two people choose to marry each other that their incomes become divided up and that she legally has the right to expect maintenance, to demand it, and it [sic] entitled to it.

Judgment, Nov. 12, 1996 at 13.

could "plot[ ] out her future." Motion Hearing Tr., Feb. 25, 1997 at 13. The court stated:

> I think that the amount of maintenance that was awarded in this particular case was appropriate, took into account all the factors. What made this case especially difficult was what I found to be the irresponsibility of Mrs. King in some of her life-style choices. But nonetheless, that was a life-style choice that was made. This court has to figure out how to divide up the income.

Motion Hearing Tr., Feb. 25, 1997 at 14. The court also declined to disturb the debt division and denied Sonia King's request for attorneys' fees, finding that Christopher King's motion for reconsideration was appropriately raised.

¶ 18. Christopher King appealed from the part of the circuit court's November 12, 1996, judgment which dealt with maintenance and debt division. In an unpublished April 1, 1998, decision, the court of appeals affirmed the circuit court on the issue of debt division and reversed the circuit court on the issue of maintenance. *King v. King*, No. 97–0994, unpublished slip op. at 4 (Wis. Ct. App. Apr. 1, 1998).

¶ 19. At the outset, the court of appeals noted that the circuit court's award of maintenance would not be disturbed in the absence of a "misuse of discretion." *Id.* at 2. According to the court of appeals, the circuit court's award must be reversed because the circuit court "ignored that its findings as to the statutory factors all negate an entitlement to maintenance." *Id.* at 3. The court pointed out that none of the relevant statutory factors show that Sonia King contributed in any way to the marriage. *Id.* The court stated:

There is no law that a spouse is entitled to take and take from the marriage without making a contribution to the marriage, and then continue to share in a payor spouse's high earnings when the marriage ends. That this is not justified is particularly true when there is a short-term marriage and the property division leaves the spouse in a far better position than when he or she entered the marriage.

*Id.*

¶ 20. The court of appeals then went on to determine that Sonia King was not entitled to maintenance. *Id.* Referring to the circuit court's finding that Sonia King had not attempted to improve her education, the court of appeals stated that "[i]n light of her minimal efforts, Sonia should not be rewarded with the substantial maintenance award made here, particularly when Christopher's income is not attributable to her marital efforts." *Id.* at 4. Because Sonia King "received a substantial amount of property and was better off than when she entered the marriage," the court of appeals held that the circuit court had "no basis to conclude that Sonia had a need for maintenance." *Id.*

¶ 21. Sonia King petitioned this court for review of the court of appeals' reversal of the maintenance award. Mrs. King also requested that this court consider whether she should be awarded attorneys' fees in light of the court of appeals' decision. We granted review of both issues.

II.

¶ 22. Circuit courts have discretion in determining the amount and duration of maintenance. *Olski v. Olski*, 197 Wis. 2d 237, 243 n.2, 540 N.W.2d 412 (1995); *Hefty v. Hefty*, 172 Wis. 2d 124, 133, 493 N.W.2d 33

(1992); *LaRocque*, 139 Wis. 2d at 27; *Steinke v. Steinke*, 126 Wis. 2d 372, 386, 376 N.W.2d 839 (1985). This court will not disturb the circuit court's award of maintenance unless the award constitutes an erroneous exercise of discretion.[9] *Olski*, 197 Wis. 2d at 243 n.2; *Hefty*, 172 Wis. 2d at 128 n.1, 133.

¶ 23. A circuit court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon facts in the record. *See Olski*, 197 Wis. 2d at 243 n.2; *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Further, "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung*, 102 Wis. 2d at 66. *See also LaRocque*, 139 Wis. 2d at 27. This court decides any questions of law which may arise during our review of an exercise of discretion independently of the circuit court and court of appeals. *See Olski*, 197 Wis. 2d at 243 n.2. As always, the analyses of the circuit court and the court of

---

[9] After the issuance of many of the cases cited in this opinion, this court held that the term "erroneous exercise of discretion" should be used instead of the term "abuse of discretion" to refer to an error by the circuit court in making a discretionary decision. *See Hefty v. Hefty*, 172 Wis. 2d 124, 128 n.1, 493 N.W.2d 33 (1992) (citing *City of Brookfield v. Milwaukee Metro. Sewage Dist.*, 171 Wis. 2d 400, 491 N.W.2d 484 (1992)). The standards for assessing whether a circuit court "erroneously exercised" its discretion are the same as those for assessing whether the circuit court "abused" its discretion. *See Hefty*, 172 Wis. 2d at 128 n.1. Accordingly, we will use the term "erroneous exercise of discretion" in place of "abuse of discretion" throughout this opinion.

appeals benefit us in our independent review. *See Clark v. American Family Mutual Ins. Co.*, 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998); *Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 70, 556 N.W.2d 697 (1996).

### A.

¶ 24. The starting point in determining maintenance is Wis. Stat. § 767.26. *LaRocque*, 139 Wis. 2d at 32. Section 767.26 sets forth a list of factors aimed at furthering the two objectives of maintenance: "the support objective," which is "to support the recipient spouse in accordance with the needs and earning capacities of the parties"; and "the fairness objective," which is "to ensure a fair and equitable financial arrangement between the parties in each individual case." *Id.* at 32–33. In setting awards of maintenance, a circuit court must apply the § 767.26 factors to the facts of the case and must convert the factors into appropriate dollar amounts and time periods. *Id.* at 33. At the same time, the court must ensure that its award will further the dual objectives of maintenance.[10] *See id.*

---

[10] In discussing the fairness objective of maintenance, this court has stated that "[i]t would seem reasonable for the trial court to begin the maintenance evaluation with the proposition that the dependent partner may be entitled to 50 percent of the total earnings of both parties." *Bahr v. Bahr*, 107 Wis. 2d 72, 84–85, 318 N.W.2d 391 (1982). The practice in the circuit courts of Wisconsin has been to use the suggested starting point and then to make adjustments to the 50 percent approach based on the statutory factors including the length of the marriage at issue. See the State Bar of Wisconsin CLE Books' publication on family law, which, in summarizing maintenance law in Wisconsin, states, "In determining maintenance, the court may

¶ 25. In this case, the circuit court awarded $450,000 in maintenance to Sonia King, to be paid over a period of three years. For the two reasons which follow, we hold that the circuit court's award constituted an erroneous exercise of discretion.

¶ 26. First, the circuit court based its award of maintenance on an error of law. In its decision, the circuit court stated that despite its findings, maintenance was justified because a spouse "legally has the right to expect maintenance, to demand it, and is entitled to it." Hearing Tr., Oct. 22, 1996 at 30. *See also* Judgment, Nov. 12, 1996 at 13.[11] As there is no law in Wisconsin which would support this assumption, the circuit court's reliance upon it constitutes an erroneous exercise of discretion.

¶ 27. As we have already explained, circuit courts are to determine the amount and duration of maintenance through analysis of the factors enumerated by Wis. Stat. § 767.26 and consideration of the twin goals of support and fairness. Nowhere in § 767.26 or any other statute has the legislature made a statement to the effect that a spouse is entitled to maintenance. Likewise, the case law discussing maintenance fails to support the circuit court's assumption that a spouse has some entitlement to maintenance. *See, e.g., Gerth v. Gerth*, 159 Wis. 2d 678, 682–84, 465

---

reasonably begin by calculating one-half of the total income of both parties. However, this is merely the starting point of the maintenance evaluation; equity of result is the determinative factor controlling the ultimate award." Leonard L. Loeb, et al., *System Book for Family Law* at 1–12 (4th ed. 1993 & Supp. 1998).

[11] The court made a similar statement in denying Christopher King's motion for reconsideration. *See* Motion Hearing Tr., Feb. 25, 1997 at 13.

N.W.2d 507 (Ct. App. 1990)(holding that circuit courts are not legally required to award maintenance in cases involving long-term marriages with disparate earning capacities between spouses). Since "the trial court's discretion must, of course, be exercised within the guidelines set forth in the statutes and cases," *Haugan v. Haugan*, 117 Wis. 2d 200, 215, 343 N.W.2d 796 (1984), the circuit court's reliance on the theory that Sonia King had a "legal entitlement" to maintenance constitutes an erroneous exercise of discretion. The circuit court based its maintenance award on an error of law.

¶ 28. Second, in awarding maintenance, the circuit court disregarded its findings as to the Wis. Stat. § 767.26 factors. A failure to apply or a misapplication of the statutory factors is an erroneous exercise of discretion. *Olski*, 197 Wis. 2d at 243 n.2; *LaRocque*, 139 Wis. 2d at 33. A circuit court erroneously exercises its discretion if it:

> fail[s] to exhibit a reasoned, illuminative mental process with which to logically connect its decision, findings and conclusions to the maintenance award. The trial court must not stop at reciting its findings of fact and conclusions of law and its decision; it must also set forth the factors on which it relied in reaching the maintenance award.

*Steinke*, 126 Wis. 2d at 389.

¶ 29. In this case, the circuit court made detailed findings as to all of the factors in Wis. Stat. § 767.26.[12]

---

[12] The circuit court did not make an explicit finding about the third factor in Wis. Stat. § 767.26, the property division, in the part of its decision in which it made its findings with respect

However, the court neglected to provide a rational explanation of how its findings as to the statutory factors squared with its award of maintenance to Sonia King. It is not at all clear how the circuit court's findings, most of which would seem to argue against awarding maintenance to Sonia King, support its $450,000 award of maintenance to Mrs. King. The court appears to have made its decision to award maintenance in spite of its findings as to the factors, rather than in accordance with those findings.[13] Circuit courts are not permitted to acknowledge the statutory factors in form but disregard them in substance. *Bahr v. Bahr*, 107 Wis. 2d 72, 82, 318 N.W.2d 391 (1982). Because the circuit court failed to articulate how its findings as to the statutory factors provide a basis for its award of maintenance, the circuit court erroneously exercised its discretion.

¶ 30. We emphasize that our decision in this case does not alter the law applicable to the determination

to the other statutory factors. *See* § 767.26(3). The court did indicate earlier in its decision, however, that it had considered the property division and maintenance issues together. Namely, the court, in awarding the parties' Winnebago Way residence to Sonia King, stated that "based upon what the court will do later in terms of maintenance payments, the court feels that Mrs. King will be financially able to pay off the mortgage" on the residence. Hearing Tr., Oct. 22, 1996 at 3.

[13] In its decision, the circuit court effectively admitted that its maintenance award ran counter to its findings with respect to the Wis. Stat. § 767.26 factors. The court itself stated that it was awarding maintenance "despite everything else that I've put on the record, which includes the fact that Mrs. King's lifestyle is one in which she seems to choose to exercise irresponsibility rather than responsibility. . . ." Hearing Tr., Oct. 22, 1996 at 30.

of maintenance. We hold only that for the two reasons we have discussed, the circuit court erroneously exercised its discretion in awarding maintenance to Sonia King. On that basis, we affirm the court of appeals' reversal of the circuit court's award of maintenance.

### B.

¶ 31. Next, we consider the opinion of the court of appeals. We agree with the court of appeals' bottom line that the circuit court's maintenance award should be reversed. Likewise, as we have indicated, we agree with much of the court's reasoning in reaching that conclusion.[14] We disagree, however, with the court of appeals' decision to determine independently that no maintenance would be appropriate in this case.

¶ 32. In past maintenance cases involving an erroneous exercise of discretion by the circuit court, this court has declined to invade the province of the circuit court by fixing the amount and duration of the maintenance ourselves. *See LaRocque,* 139 Wis. 2d at 43; *Steinke,* 126 Wis. 2d at 389; *Haugan,* 117 Wis. 2d at

---

[14] We note that the court of appeals never expressly stated that the circuit court had erroneously exercised its discretion. Since the court of appeals recognized that the standard of review was "misuse of discretion," slip op. at 2, it likely can be inferred that the court of appeals found an erroneous exercise of discretion from the court of appeals' statement that the circuit court "ignored that its findings as to the statutory factors all negate an entitlement to maintenance." Slip op. at 3. *See LaRocque,* 139 Wis. 2d at 33 (holding that the circuit court erroneously exercises its discretion if it fails to apply or misapplies the statutory factors when determining maintenance). Nevertheless, it would have been better for the court of appeals to have explicitly found that the circuit court erroneously exercised its discretion.

220–221; *Hartung*, 102 Wis. 2d at 60. In *LaRocque*, we explicitly rejected the recipient spouse's request that we direct the circuit court to make a particular maintenance award. *See LaRocque*, 139 Wis. 2d at 43. We explained that this court "cannot and should not exercise the discretion which is properly the circuit court's." *Id.*

■■■

¶ 33. In spite of the fact that this court has been hesitant to substitute our determination for that of the circuit court, the court of appeals chose in this case to draw its own conclusions from the factors in Wis. Stat. § 767.26 and to determine itself that Sonia King was not entitled to maintenance.[15] Based on our prior case law, we do not endorse the court of appeals' approach in this regard. In our view, when a reviewing court finds that a circuit court erroneously exercised its discretion in determining maintenance, the correct course of action is to reverse the award and remand the case to the circuit court so that it may properly exercise its discretion. Accordingly, we reverse the circuit court's award of maintenance to Sonia King and remand the case to the circuit court for a proper determination of maintenance in accordance with Wis. Stat. § 767.26.

---

[15] For example, the court of appeals made determinations such as: "In light of her minimal efforts, Sonia should not be rewarded with the substantial maintenance award made here"; "Sonia received a substantial amount of property and was better off than when she entered the marriage"; and "Not one of the statutory factors indicates that Sonia made any contribution to the partnership. . . ." Slip op at 4.

## III.

██

¶ 34. Finally, we consider the issue of attorneys' fees. In its original decision, the circuit court held that each party was to pay his or her own attorneys' fees. However, as Sonia King pointed out in her brief and as this court recognized in *LaRocque*, the determination of who will pay attorneys' fees is closely intertwined with the determination of maintenance. *See LaRocque*, 139 Wis. 2d at 42–43. If the circuit court, upon remand, should decide to alter its original maintenance award, the parties' new financial situation may cause the circuit court to conclude that an award of attorneys' fees to Sonia King would be appropriate. Consequently, we decline to address further the issue of attorneys' fees. We hold only that upon remand, the circuit court is free to consider attorneys' fees along with the maintenance award.[16]

---

[16] We note that Christopher King, pursuant to Wis. Stat. § (Rule) 809.14(1), filed a motion to bar review of pages 65 to 127 of the appendix to Sonia King's brief. The pages in question contain bills for attorneys' fees which Mrs. King incurred in 1997 and 1998. It is clear that these pages do not appear in the record because the divorce trial in this case occurred in 1996 and Mrs. King has made no claim that the pages are in the record.

In our June 19, 1998, order, we held Dr. King's motion in abeyance pending our final decision in this case. We now grant the motion, consistent with precedent in which this court has repeatedly held that our review of a case is limited to the record. *State ex rel. Wolf v. Town of Lisbon*, 75 Wis. 2d 152, 155, 248 N.W.2d 450 (1977); *State v. Jackson*, 69 Wis. 2d 266, 274, 230 N.W.2d 832 (1975); *Schimke v. Milwaukee & Suburban Transp. Corp.*, 34 Wis. 2d 317, 320, 149 N.W.2d 659 (1967). As we stated in *Wolf*, "This court is bound by the record, and the record is not

## IV.

¶ 35. In sum, we hold that the circuit court erroneously exercised its discretion in awarding maintenance to Sonia King because (1) it based the award on the invalid assumption that a spouse has a legal entitlement to maintenance; and (2) it disregarded its findings as to the Wis. Stat. § 767.26 factors in making the award. Therefore, we affirm the decision of the court of appeals reversing the circuit court's award of maintenance.

¶ 36. Although we agree with the court of appeals' reversal of the circuit court, we do not agree with the court of appeals' decision to evaluate independently whether Sonia King should receive maintenance. We conclude that the correct approach is to remand the case to the circuit court so that it may exercise its discretion in determining maintenance.

¶ 37. In light of our decision to remand the case, we decline to address the issue of attorneys' fees. The circuit court is free to revisit the question upon remand.[17]

---

to be enlarged by material which neither the trial court nor this court, acting within their respective jurisdictions, have ordered incorporated in it." *Wolf*, 75 Wis. 2d at 155–56. We emphasize, however, that our decision to grant this motion does not in any way prevent Mrs. King from introducing, or the circuit court from considering, this particular evidence upon remand.

[17] We note that the circuit court may also have based its decision to award the Kings' Winnebago Way residence to Sonia King in part on its maintenance award. In its oral decision, the court stated, "based upon what the court will do later in terms of maintenance payments, the court feels that Mrs. King will be financially able to pay off the mortgage" on the residence. Hearing Tr., Oct. 22, 1996 at 3. As the appropriateness of the property division was not before us, we do not address the issue.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.