HOME INSURANCE COMPANY, Plaintiff-Respondent,

v.

Vicki TOOKE, Defendant-Appellant.

Court of Appeals

*No. 92-0950. Submitted on briefs September 16, 1992.—Decided January 26, 1993.*

(Also reported in 496 N.W.2d 749.)

For the defendant-appellant the cause was submitted on the briefs of *Hausmann-McNally, S.C.* by *Deborah S. Herro,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Allan D. Krezminski,* of Waukesha.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J.    Vicki Tooke appeals from a declaratory judgment granted to Home Insurance Company. Tooke had been involved in a motor vehicle accident with Devere Vernon, an underinsured motorist. Home Insurance was Tooke's underinsured motorist insurance carrier. Vernon and his insurance carrier, Sentry, entered an agreement with Tooke by which Sentry agreed to pay its policy limit, $25,000, to Tooke. The agreement apportioned that payment into $2,500 as

compensatory damages and $22,500 as punitive damages. Home Insurance moved the trial court for a declaratory judgment that it was not bound by the apportionment of the Sentry payment. When the trial court granted Home Insurance a declaratory judgment, Tooke appealed.

Pursuant to this court's order dated May 19, 1992, this case was submitted to the court on the expedited appeals calendar. Upon review of the briefs and record, we conclude, upon our own motion, that this appeal should be removed from the expedited appeals calendar. Because we conclude that Home Insurance was not bound by the terms of Tooke's agreement with Sentry, we affirm the trial court's judgment.

## I. BACKGROUND

The relevant facts are undisputed. Tooke, who was employed as a school bus driver, was involved in an accident with Vernon in which she sustained serious injuries. Sentry tendered its $25,000 policy limit to Tooke.

Prior to accepting the tendered amount, Tooke informed Home Insurance of Sentry's offer and offered Home Insurance the opportunity to object to the offer and to tender the Sentry policy limits in order to retain its subrogation rights. Tooke's letter informed Home Insurance of the apportionment of the Sentry offer between compensatory and punitive damages. Tooke gave Home Insurance ten days to respond to her letter.

When Tooke did not receive a response from Home Insurance by the deadline, she sent a follow-up letter again informing Home Insurance of the terms of the settlement agreement. The letter also memorialized a conversation between Tooke's and Home Insurance's respective attorneys. That portion of the letter indicated

that Home Insurance's attorney had informed Tooke that it would not preserve its subrogation rights and that it therefore would not tender an amount equal to that of the Sentry policy limits. Tooke's second letter gave Home Insurance an additional five days to register its objection to the terms of the settlement with Sentry.

Home Insurance did not respond within that deadline and Tooke accepted the tendered amount from Sentry. Approximately twenty days after Home Insurance was notified of the settlement—but after Tooke signed the release—Home Insurance notified Tooke in writing that it would not preserve its subrogation rights. In its letter to Tooke, Home Insurance stated that it did not "feel bound in any way by [Tooke's] arbitrary assessment of [$2,500] for personal injuries and [$22,500] for punitive damages."

When Tooke and Home Insurance were unable to resolve their differences regarding additional amounts due Tooke, the matter proceeded to arbitration. The arbitrator determined that Tooke was entitled to $37,800 in compensatory damages. Consistent with its refusal to accept the apportionment of damages in Tooke's settlement with Sentry, Home Insurance tendered to Tooke $12,800, the difference between the arbitrator's award and the total amount paid by Sentry. Tooke rejected Home Insurance's offer, contending that she was entitled to $35,300 from Home Insurance: the arbitrator's award less the $2,500 labeled as compensatory damages in the agreement with Sentry.

Home Insurance began an action for a declaratory judgment. It asked the trial court to determine that it was not bound by the apportionment between punitive and compensatory damages set forth in the Tooke/Sentry settlement. Tooke counterclaimed, asking the trial court to order Home Insurance to pay her $35,300. The

trial court concluded that Tooke's apportionment of damages in the settlement was not binding upon Home Insurance. It therefore granted declaratory judgment to Home Insurance and dismissed Tooke's counterclaim. Tooke appeals.

## II. DISCUSSION

Our review of a trial court's grant of declaratory relief is limited to a determination of whether the trial court misused its discretion. *Loy v. Bunderson*, 101 Wis. 2d 215, 219, 304 N.W.2d 140, 142 (Ct. App. 1981). To be sustained, a discretionary determination must be the result of a rational mental process where the facts of record and law relied upon are stated and considered together to achieve a reasoned and reasonable decision. *LaRocque v. LaRocque*, 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987).

Tooke argues first that an insurer can be bound by the apportionment of damages agreed to in a settlement when the insurer has had "opportunity and authority" to reject the apportionment. She suggests that, by having been given the opportunity to reject the apportionment, Home Insurance became a party to the settlement agreement and should, therefore, be bound by it. She contends that this position is supported by *Vogt v. Schroeder*, 129 Wis. 2d 3, 383 N.W.2d 876 (1986). We disagree. *Vogt* is easily distinguished from the instant case and is, therefore, not dispositive.

In *Vogt*, the issue before the supreme court was defined as follows: "Whether an automobile insurer which by the terms of its contract pays its own insured under the underinsured motorist coverage has a right of subrogation against the tortfeasor (the under-insured motorist) once a payment has been made to its own

51

insured." *id.* at 15-16, 383 N.W.2d at 881. In concluding that an insurer does have subrogation rights under such circumstances, the court held that the insurer must be informed of a settlement between its insured and the tortfeasor and given a reasonable opportunity to tender the amount of the settlement offer in order to preserve its subrogation rights. *See id.* at 20-23, 383 N.W.2d at 883-84. Noting that the purpose of subrogation is to prevent an insured's double recovery, the court concluded that the insurer may reject a settlement offer from the tortfeasor's insurer, but that the cost of doing so "is payment to its own insured in the sum offered by the tortfeasor's insurance company." *Vogt*, 120 Wis. 2d at 21-22, 383 N.W.2d at 883. The court noted, however, that " '[i]f the underinsurer were to determine after assessment that recovery of underinsurance benefits it paid was unlikely,' " it could refuse to preserve its subrogation rights and thereby permit the settlement and release. *Vogt*, 129 Wis. 2d at 21, 383 N.W.2d at 883 (quoting *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn. 1983)). By doing so, however, the underinsurer takes the risk that it will pay additional damages to its insured without having the right to pursue the tortfeasor for recovery of the additional amount paid.

Home Insurance followed this procedure precisely and did not participate in the negotiation of the settlement offer, including the allocation of the amount tendered by Sentry between compensatory and punitive damages. Home Insurance waived its subrogation rights and chose not to participate in the settlement agreement negotiated between Tooke and Sentry. Because Home Insurance was not a party to the settlement agreement, it cannot be held to the terms negotiated between Tooke and Sentry. Thus, the trial court did not misuse its dis-

cretion when it concluded that Home Insurance was not bound by the negotiated settlement.

Next, Tooke contends that Home Insurance is estopped from objecting to the allocation of the Sentry payment between compensatory and punitive damages. She contends that Home Insurance had an opportunity to reject the allocation but did not respond in the time allotted by her counsel. Tooke's attorney initially gave Home Insurance ten days to respond but then extended that time by five days. Home Insurance responded twenty days after Tooke's initial letter.

"The elements of estoppel are (1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his detriment." *Sanfelippo v. DOR*, 170 Wis. 2d 381, 390, 490 N.W.2d 530, 534 (Ct. App. 1992). Tooke argues that Home Insurance's failure to respond to her letters within the time she allotted induced her to enter the agreement with Sentry and that her decision to do so was reasonable.

We disagree. Tooke unilaterally established deadlines without any apparent consultation with Home Insurance regarding its needs and without any explanation as to why a ten- or fifteen-day deadline was crucial to the settlement.[1] Home Insurance responded within twenty days,[2] during which time it presumably assessed

---

[1] The letters from Tooke to Home Insurance state that the deadlines were necessary "to promptly dispose of this claim."

[2] Although we are not called upon here to determine a "reasonable" amount of time for an insurer to decide whether to preserve its subrogation rights, we note with some interest that the supreme court cited in *Vogt* a statement by the Minnesota

53

the situation and determined whether it wished to preserve its subrogation rights. As we have already held, once Home Insurance chose to forego its subrogation rights, it was not a party to the settlement agreement. Tooke's creation of deadlines for Home Insurance to preserve its subrogation rights did not operate to make Home Insurance a party to the settlement itself. Home Insurance, which was not obligated to comply with Tooke's deadlines, proceeded to evaluate its position on the claim as it was permitted to do under *Vogt*. Tooke's unilateral creation and imposition of deadlines on Home Insurance does not make her reliance on those deadlines "reasonable."

Because the insurance contract between Home Insurance and Tooke specifically provided that Home Insurance's underinsured motorist limits were to be reduced "by all sums paid by or for anyone who is legally responsible" for the insured's injuries, the trial court's decision requiring Home Insurance to pay Tooke $12,800 was correct.

*By the Court.*—Judgment affirmed.

---

Supreme Court that ten days was too short a time for a subrogation determination to be made and stated that " '30 days from the written notice of the tentative settlement agreement is a more reasonable time period.' " *Vogt*, 129 Wis. 2d at 22 n.10, 383 N.W.2d at 884 n.9 (quoting *Schmidt*, 338 N.W.2d at 263).