David J. KAPPUS and Virginia Kappus, Plaintiffs-
Respondents,†

v.

UNITED FIRE AND CASUALTY COMPANY, Defendant-
Appellant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and
Eau Claire Anesthesiologists, Ltd., Employee Benefit
Plan, Ltd., Defendants.

Court of Appeals

*No. 99–0187. Submitted on briefs July 13, 1999.—Decided
July 30, 1999.*

(Also reported in 600 N.W.2d 274.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kara M. Burgos* of *Moen, Sheehan, Meyer, Ltd.* of La Crosse.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Michael J. Happe* of *Kelly & Ryberg, S.C.* of Eau Claire.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. United Fire and Casualty Company (United) appeals from a judgment entitling David Kap-

pus to recover underinsured motorist benefits from United in the amount of $62,524.93.[1] Pursuant to a jury verdict in favor of the Kappuses, American Family Mutual Insurance Company (American Family), the tortfeasor's insurance carrier, paid its $50,000 liability limits. The Kappuses, thereafter, agreed to divide the $50,000 equally between them. United argues that the trial court erred when it bound United to the agreement between the Kappuses—an agreement to which United was not a party. United further argues that the Kappuses waived the right to rely on the jury verdict when it chose to proceed to de novo binding arbitration. United additionally contends that the trial court should have enforced the damage allocation determined in post-verdict, binding arbitration, without deference to the allocation agreement made between David and Virginia Kappus. We agree with United's contentions, reverse the trial court's judgment and remand for further proceedings.

## I. BACKGROUND

The facts are not disputed. On July 24, 1995, David and Virginia Kappus initiated a lawsuit against, among others, American Family Mutual Insurance Company and United Fire and Casualty Company. The Kappuses sought to recover damages, resulting from a

---

[1] The trial court's December 15, 1998, judgment stated, in pertinent part:

IT IS HEREBY ORDERED AND ADJUDGED THAT:

Plaintiff David Kappus does have and recover of and from Defendant United Fire and Casualty Company the sum of $60,000.00, together with interest from the date of the arbitrator's decision on July 8, 1998 to the date of this Court's decision on November 13, 1998, at a rate of 12 percent, the sum of $2,524.93, for a total judgment of $62,524.93.

motor vehicle accident, for David Kappus' medical payments, pain and suffering, permanent disability and impairment of earning capacity, and for Virginia Kappus' loss of the services, companionship and society of her spouse. During the relevant time period, United insured Kappus under a Commercial Lines Policy that included underinsured motorist coverage.

Subsequent to the filing of the Kappuses' complaint, the trial court granted United's motion to stay the action against United, to allow arbitration pursuant to § 788.02, STATS.,[2] consistent with the terms of its policy.[3] A jury trial proceeded, however, against the tortfeasor and American Family, the tortfeasor's insurance carrier, on the issue of liability and damages. In February 1997, after a jury trial, a special verdict was returned in favor of the Kappuses. The jury, determining the total value of the Kappuses' claims to be

---

[2] Section 788.02, STATS., states:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[3] Under United's underinsured motorist provision, the issue of arbitration is addressed as follows:

> (a) If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration
> . . . .
>
> (b) . . . A decision agreed to by two [of the three] arbitrators will be binding.

$135,000, apportioned $110,000 to David Kappus and $25,000 to Virginia Kappus. Following the jury verdict, American Family tendered its $50,000 liability limits. Pursuant to an agreement between the Kappuses, Virginia Kappus received $25,000 (the amount apportioned by the verdict) and David Kappus received the remaining $25,000 (thereby leaving $85,000 of the jury verdict to be paid by the Kappuses' underinsured motorist provision, through United).

Thereafter, in October 1997, United moved the court for a ruling to prevent the Kappuses from pursuing a trial de novo in arbitration and further, to allow United to satisfy the remaining $85,000 of the jury verdict. The Kappuses opposed United's motion, citing their reliance on United's pretrial request for a stay to pursue arbitration. Subsequently, United's motion was denied and both Kappuses moved to arbitration on the damages. The arbitrators subsequently awarded the Kappuses a total of $90,000 maximum in damages, apportioning $85,000 to David and $5,000 to Virginia.

After arbitration, the parties could not agree on the amount of United's underinsured motorist liability to the Kappuses. Consequently, United moved the trial court to enforce the arbitration award, urging the court specifically to order United to pay $40,000 to the Kappuses as full and final satisfaction of the arbitration award. The trial court found that because the Kappuses had agreed to equally divide the $50,000 from American Family, it would not disturb their agreement. The trial court, purportedly adopting the damages awarded in arbitration, held that Virginia Kappus' $5,000 arbitration award had been satisfied by the $25,000 from American Family; therefore, Virginia was not entitled to underinsured motorist

benefits from United.[4] The court additionally found that David Kappus' $85,000 arbitration award was only partially satisfied by the $25,000 from American Family, thereby leaving him eligible for $60,000 in underinsured motorist benefits from United.[5] This appeal followed.

## II. ANALYSIS

The issue before this court is whether United is bound by the Kappuses' agreement to allocate the payment from American Family equally between them, so that, pursuant to post-verdict arbitration, United would be liable for underinsured motorist benefits in the amount of $60,000, as opposed to $40,000. As recognized by the trial court, the language of the "reducing clause" in United's policy is not ambiguous. It states:

> The LIMIT OF INSURANCE under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.

Further, United's policy noted that "in no event will an 'insured' be entitled to receive duplicate payments for the same elements of 'loss.' " (Citations omitted). Given this language, United argues that the payment by American Family should be deducted from any sums owed under United's underinsured motorist policy. In other words, the $50,000 policy limits paid by American Family should be subtracted from the arbitrators' award of $90,000 in total damages to the Kappuses,

---

[4] Virginia Kappus: $25,000 (American Family) - $5,000 (arbitration award) = $20,000.

[5] David Kappus: $85,000 (arbitration award) - $25,000 (American Family) = $60,000.

regardless of any allocation agreement between the Kappuses to the contrary. We agree.

United argues that an underinsured carrier should not be held to the terms negotiated between its insureds. To support its contention, United cites *Home Ins. Co. v. Tooke*, 174 Wis. 2d 47, 496 N.W.2d 749 (Ct. App. 1993), wherein an individual involved in a motor vehicle accident with an underinsured motorist entered into an agreement with the tortfeasor's insurance carrier for payment of the carrier's $25,000 policy limits. Pursuant to this agreement, the payment was apportioned as follows: $2,500 for compensatory damages and $22,500 for punitive damages. *See id.* at 48–49, 496 N.W.2d at 750. In *Tooke*, we held that "because [the underinsured motorist insurance carrier] was not a party to the settlement agreement, it [could not] be held to the terms negotiated between [the plaintiff] and [the tortfeasor's insurance carrier]." *Id.* at 52, 496 N.W.2d at 752. The Kappuses assert that *Tooke* is distinguishable from the instant case because *Tooke* involved a settlement agreement, where this case involves payment pursuant to a jury verdict. The Kappuses' efforts to distinguish *Tooke* are unconvincing. Although American Family paid its $50,000 policy limits pursuant to the jury verdict's establishment of their liability, the trial court found that the Kappuses *chose* to allocate the judgment equally rather than prorating it according to the jury's allocation of damages.[6] The

---

[6] The trial court, citing *Wondrowitz v. Swenson*, 132 Wis. 2d 251, 258–59, 392 N.W.2d 449, 452 (Ct. App. 1986), recognized that:

> Where several claims arising from one accident are joined in one suit against the insurer whose maximum liability under the policy is inadequate to pay in full the amounts to which the claimants become entitled, it has generally been held that the proceeds are to

equal division of American Family's payment essentially resulted from an agreement between David and Virginia Kappus. Consequently, and consistent with our decision in *Tooke*, United is not bound to the terms of an agreement to which it was not a party, especially where, as here, both Kappuses elected to try de novo the issue of damages at arbitration.

United additionally argues that the Kappuses waived their right to rely on the jury verdict when they chose to proceed to binding arbitration on their damages claims. The Kappuses contend, however, that while the jury verdict determined the amount they received from the tortfeasor, the arbitration merely

be distributed on a pro rata basis in accordance with the amount of damage suffered by each claimant.

In the instant case, if the distribution of American Family's liability limits had been done on a pro rata basis, David Kappus would have been paid $40,740.74 ($110,000/135,000 x 50,000 = $40,740.74) and Virginia Kappus would have been paid $9,259 ($25,000/135,000 x 50,000 = $9,259). However, the trial court reasoned that because no dispute existed between the Kappuses as to the allocation of American Family's $50,000 payment, it was not required to impose a proration on them.

Whether the Kappuses should have been bound to prorate American Family's payment is an issue that was neither raised on appeal nor is dispositive of this litigation, as the fact remains that the jury verdict's damages apportionment was substituted with the arbitrators' determination of the allocation of damages. *See Anderson v. Nelson*, 38 Wis. 2d 509, 514, 157 N.W.2d 655, 658 (1968); *see also Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need be addressed). This discussion of proration serves only to emphasize the fact that the Kappuses chose equal division rather than proration. It was this agreement between the Kappuses that the trial court chose not to disturb, thereby binding United to its terms.

determined the maximum amount of damages the Kappuses were entitled to if they had not been made whole as a result of the jury verdict.[7] Neither party disputes that the jury trial effectively established liability on the part of American Family. In fact, in the Kappuses' response to United's trial court motion to enforce the arbitration award, the Kappuses stated that they "sued American Family for [the tortfeasor's] $50,000 policy limits and ultimately obtained a verdict against American Family." The Kappuses concede that neither they, the arbitrators nor United were bound by the total damages awarded to David Kappus by the jury in the liability suit. The Kappuses further recognize that

---

[7] The Kappuses argue that the parties proceeded to arbitration at United's request. Although it was United that initially made a motion to stay the action against it in order to proceed to arbitration, it was the Kappuses' decision to oppose United's motion to satisfy judgment that ultimately propelled the parties into arbitration. Arbitration, under the policy, may be requested where there is a disagreement between the insurer and the insured as to either the entitlement to recover damages or as to the amount of damages. However, after the jury verdict awarded the Kappuses $135,000 in damages, United wanted to pay the $85,000 difference between the verdict and the payment of American Family's $50,000 policy limits.

Although the Kappuses argue that they objected to United's motion to satisfy the verdict because they relied on United's arbitration demand in resolving post-verdict issues with American Family, the fact remains that any purported reliance was irrelevant as American Family ultimately paid its liability limits. Given these facts, we must conclude that it was the Kappuses' dispute of the damages that resulted in the parties going to arbitration. Consequently, the Kappuses' arguments to the contrary are unpersuasive. Regardless of how the parties ended up in arbitration, the fact remains that the maximum damages awarded by the arbitrators was binding.

although the jury determined that David Kappus was entitled to $110,000, they are bound by the arbitrators' determination of David Kappus' entitlement to a maximum of $85,000. It is inconsistent, therefore, for the Kappuses to argue that the parties are bound by the verdict awarding $25,000 to Virginia Kappus in the same liability suit, when the arbitrators determined Virginia was entitled to a maximum of only $5,000. Thus, under these circumstances, the jury verdict did no more than determine that the tortfeasor was an underinsured motorist.

Apart from the inconsistencies of the Kappuses' argument, this court has further recognized that "the purpose of . . . uninsured motorist coverage is to place the insured in the same position as if the uninsured motorist had been insured." *Calbow v. Midwest Security Ins. Co.*, 217 Wis. 2d 675, 677, 579 N.W.2d 264, 265 (Ct. App. 1998). As such, "an insured who has been fully compensated for injuries from other sources is not entitled to an additional recovery—a windfall—under his or her uninsured motorist benefits." *Id.* Were we to adopt the Kappuses' allocation of American Family's payment, Virginia Kappus would, indeed, receive a "windfall" in the amount of $20,000. This is an end to which our decision in *Calbow* forbids. *See id.*

We therefore hold that United cannot be bound by the agreement between the Kappuses to equally divide the payment of American Family's $50,000 policy limits—an agreement to which United was not a party. Thus, the $50,000 payment from the tortfeasor must be applied toward the arbitrator's $90,000 damage award without regard to how the Kappuses apportioned American Family's payment. This means that, of the

708

$50,000 payment from American Family, $5,000 would be applied toward Virginia Kappus' damages and the remaining $45,000 would be applied toward David Kappus' damages of $85,000, leaving $40,000 to be paid by United as the underinsured motorist carrier. Consequently, we reverse the judgment and remand the matter to the trial court to amend the judgment consistent with our opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.