IN RE the MARRIAGE OF: Jean Ann HEFTY, Petitioner-Respondent,

v.

Thomas Roger HEFTY, Respondent-Appellant.

Supreme Court

*No. 91–0211. Oral argument October 6, 1992.—Decided December 15, 1992.*

(Also reported in 493 N.W.2d 33.)

For the respondent-appellant there were briefs by *Richard E. Reilly, Marna M. Tess-Mattner, Kathryn A. Keppel* and *Gimbel, Reilly, Guerin & Brown,* Milwaukee and oral argument by *Richard E. Reilly.*

For the petitioner-respondent there was a brief by *Leonard L. Loeb, Sharon A. Drew* and *Loeb, Herman & Drew, S.C.*, Milwaukee and oral argument by *Leonard L. Loeb*.

DAY, J.   This appeal is before us on certification from the court of appeals pursuant to sec. 809.61 Stats. 1989–90. Thomas Hefty appealed the judgment of the circuit court for Waukesha County, Honorable Patrick L. Snyder, Judge, which required him to pay child support and maintenance to his former wife Jean Hefty. The circuit court awarded Jean Hefty maintenance for an indefinite period of time in the amount of $5,000 per month plus twenty percent of any bonus which Thomas Hefty may receive in excess of his base salary. Thomas Hefty must also pay child support in the amount of $1,500 per month plus ten percent of any bonus which he receives in excess of his base salary.

This case presents three issues on appeal: (1) may a maintenance award be expressed as a percentage of future bonus income; (2) did the circuit court "erroneously exercise its discretion"[1] when it set the amount and duration of maintenance and child support; and (3) did the circuit court err in refusing to consider Jean Hefty's alleged marital misconduct.

Thomas and Jean Hefty were married in 1968. Both were college students at the time and neither brought

[1] Although this court previously used the term "abuse of discretion" to describe a circuit court's error in reaching a decision involving discretion, this court recently decided to use the term "erroneous exercise of discretion" because the term "abuse of discretion" carries an unjustified negative connotation. The standards for determining "erroneous exercise of discretion" are the same as those used to determine "abuse of discretion." *See City of Brookfield v. Milwaukee Metropolitan Sewage District*, 171 Wis. 2d 400, 491 N.W.2d 484 (1992).

significant assets to the marriage. During the marriage, Jean Hefty earned an undergraduate degree while Thomas Hefty went on to earn a master's degree and a law degree.

The couple have two children, who were sixteen and thirteen at the time of divorce. Jean Hefty worked outside of the home until the first child was born in 1973. After the birth of the first child, she worked as a homemaker and did not work outside the home until 1982, when she began working as a substitute teacher. The most she earned in any one year was $6,250. If she secures a full-time teaching position, she will earn $20,100 annually.

At the time Jean Hefty filed for divorce and at the time the divorce was granted, Thomas Hefty was President and Chief Executive Officer of Blue Cross and Blue Shield of Wisconsin. In 1988, the year Jean Hefty filed for divorce, he earned $88,000. In 1990, the year the circuit court granted the divorce and entered judgment, he earned $210,000 in base salary and $216,000 in bonuses.

The circuit court divided the property equally between Thomas and Jean Hefty and approved joint custody of the children. The circuit court also required Thomas Hefty to pay child support for the minor children in the amount of $1,500 per month plus ten percent of the gross of any bonus in excess of his base salary. He was also ordered to pay Jean Hefty maintenance for an indefinite period of time in the amount of $5,000 per month plus twenty percent of the gross of any bonus in excess of his base salary. Maintenance will terminate if Jean Hefty remarries or upon the death of either party.

Thomas Hefty appealed the circuit court's decision and this court accepted certification from the court of appeals. On appeal, he argues that: (1) the circuit court

did not have the authority to award maintenance based on a percentage of his future income; (2) the circuit court abused its discretion when it set the amount and duration of maintenance and child support; and (3) the circuit court erred when it refused to consider Jean Hefty's alleged marital misconduct. We reject all three of his arguments and therefore affirm the circuit court.

I.

The first issue is did the circuit court err when it set part of maintenance as a percentage of Thomas Hefty's bonus income. The question of whether a maintenance award may ever be set as a percentage of the payer's income is a question of law which we decide independently and without deference to the trial court. *In re Marriage of Poindexter,* 142 Wis. 2d 517, 528–29, 419 N.W.2d 223 (1988).

Thomas Hefty argues that the circuit court lacks constitutional and statutory authority to set maintenance as a percentage of his income. This court, however, held that "a percentage maintenance award is, under very unusual circumstances, within a circuit court's discretion." *Id.* at 529. While Sec. 767.26, Stats.,[2]

---

[2] **767.26 Maintenance Payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

    (1)   The length of the marriage.

    (2)   The age and physical and emotional health of the parties.

    (3)   The division of property made under s. 767.255.

    (4)   The educational level of each party at the time of marriage and at the time the action is commenced.

    (5)   The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial respon-

which controls maintenance, does not expressly authorize or prohibit percentage awards, sec. 767.25(a), Stats.,[3] specifically authorizes a circuit court to use a percentage of income award when setting child support. This court, in *Poindexter,* held, "in light of the legislatively condoned use of percentage awards in child support and in the absence of language restricting the form of a maintenance award, that a percentage maintenance award is not proscribed by the maintenance statutes and is within a circuit court's discretion." *Id.* at 530.

Thomas Hefty claims that this court, in deciding *Poindexter,* violated the United States and Wisconsin

sibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6)   The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7)   The tax consequences to each party.

(8)   Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9)   The contribution by one party to the education, training or increased earning power of the other.

(10)   Such other factors as the court may in each individual case determine to be relevant.

[3] 767.25 Child Support. (1)   Whenever the court approves a stipulation for child support under s. 767.10, enters a judgment of annulment, divorce or legal separation, or enters an order or a judgment in an action under s. 767.02 (1)(f) or (j) or 767.08, the court shall do all of the following:

(a)   Order either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child. The support amount **may be expressed as a percentage of parental income** or as a fixed sum. (Emphasis added.)

Constitutions by invading the legislature's field. The Legislature, however, did not prohibit percentage awards when it enacted sec. 767.26, Stats. Additionally, Thomas Hefty cites no authority that prohibits this court from interpreting sec. 767.26, as permitting percentage of income maintenance awards.

While this court, in *Poindexter,* established a circuit court's authority to set maintenance as a percentage of the payer's income, this court cautioned that a percentage award should be used only "when very unusual circumstances of the case warrant a deviation from a fixed sum award." *Id.* at 531. In *Poindexter,* the unusual circumstance was the payer's ability to manipulate his income. In the present case, Thomas Hefty receives annual bonuses and cannot predict the amount of future bonuses. We hold that the unpredictable amount of Thomas Hefty's future income warrants a deviation from a fixed sum award. To rule otherwise would force the circuit court to guess the amount of his future bonus income. Because he testified that the amount of the future bonuses is impossible to predict, we conclude that the circuit court is allowed to set a flexible percentage award. We therefore hold that the *Poindexter* "unusual circumstances" test is satisfied whenever the payer will receive an unpredictable amount of income such as Thomas Hefty's bonus income.

We disagree with Thomas Hefty's claim that percentage awards violate public policy. When a court sets a percentage award, a subsequent increase or decrease in the payer's income results in an automatic adjustment. If, however, a court sets a fixed amount of maintenance, an adjustment requires court action in the absence of a stipulation by the parties. "Because the costs associated with court intervention are substantial and because the

parties involved are often financially distressed, the use of a percentage award and its automatic adjustment is preferable." *Id.* at 545 (Callow, J., concurring).

## II.

The second issue is did the circuit court determine a proper amount and duration of maintenance and child support. "The determination of the amount and duration of maintenance is entrusted to the sound discretion of the circuit court, and this court will not disturb the determination of the circuit court unless the circuit court abuses its discretion." *In re Marriage of LaRocque,* 139 Wis. 2d 23, 27, 406 N.W.2d 736 (1987). Likewise, "[t]he determination of child support rests within the sound discretion of the trial court and will not be overturned unless the trial court abuses its discretion." *Edwards v. Edwards,* 97 Wis. 2d 111, 116, 239 N.W.2d 160 (1980).

## A.

Thomas Hefty makes four arguments in support of his claim that the circuit court abused its discretion when setting the amount and duration of maintenance: (1) the award is excessive because it allows Jean Hefty to maintain a better standard of living than she did during the marriage; (2) the award is excessive because it exceeds her budget; (3) the circuit court failed to consider his obligation to support charitable and civic organizations; and (4) the circuit court should not have awarded her maintenance for an indefinite period of time.

First, Thomas Hefty argues that a court should determine maintenance based on the parties' standard of living during the marriage and that Jean Hefty should receive only enough maintenance to allow her to con-

tinue living in the same fashion as she did during the marriage. He maintains that she should not share in his salary increase which occurred after she filed for divorce but before the circuit court entered judgment. He also asserts that she should not share in any future increases in his income.

We disagree with Thomas Hefty's position and conclude that the circuit court did not erroneously exercise its discretion when it awarded Jean Hefty maintenance based on his increased income and allowed her to share in future increases. In *LaRocque,* this court held: "We believe that a reasonable maintenance award is measured not by the average annual earnings over the duration of a long marriage but by the lifestyle that the parties enjoyed in the years immediately before the divorce **and could anticipate enjoying if they were to stay married.**" *LaRocque,* 139 Wis. 2d at 36 (emphasis added). While a court may base maintenance on an increase in the payer's income which occurs in the years immediately preceding the divorce, a court may also set a flexible percentage award which will take into account any post-divorce increases which the parties could reasonably anticipate. Thus, a court may decide maintenance based on the amount and nature of the income at the time the divorce is granted.

Thomas Hefty urges us to overrule *LaRocque* to the extent it suggests that the amount of maintenance may be based upon an unexpected increase in income. We, however, do not read *LaRocque* as suggesting that maintenance be based upon an **unexpected** increase in income. According to this court's decision in *LaRocque,* it is proper to consider the lifestyle that the parties could **anticipate** enjoying if they stayed married.

134

We conclude that the parties could have reasonably anticipated the increase in Thomas Hefty's salary. The increase in his wealth stems from his position as the president of a major corporation. During the marriage, he worked long hours and moved the family several times while he enhanced his career. He became Vice President and General Counsel of Blue Cross/Blue Shield in 1982 and became President of Blue Cross/Blue Shield four years later. Considering the fact that he rose to the position of president of a major corporation during the marriage, the parties could have reasonably anticipated that he would command such a large salary. Our holding today addresses only those situations where the parties could have reasonably anticipated marked fluctuations in income. Thus, the scenario in which the payer won the lottery or received an unexpected inheritance would present a different case.

If we limit maintenance to an amount which allows the recipient to enjoy only the same lifestyle as during the marriage, it would penalize those recipients who lived in a modest and frugal fashion while building a base for future affluence. Furthermore, courts frequently consider a decrease in the payer's income and set maintenance at a level below that which was enjoyed during the marriage. Since maintenance recipients are forced to adjust their own lifestyle downward when a payer's income decreases, the recipients may be allowed to share in an increase in a payer's income.

Thomas Hefty points out that the maintenance award exceeds Jean Hefty's budget. Although he is correct, support is not the sole objective of maintenance. Maintenance furthers two distinct objectives: "to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objec-

tive) and to ensure a fair and equitable financial agreement between the parties in each individual case (the fairness objective)." *LaRocque,* 139 Wis. 2d at 33. Thus, the circuit court may, in the interest of fairness, set maintenance at a level which exceeds the recipient's budget.

When discussing the fairness objective of maintenance, this court stated that when a couple has been married many years and achieves increased earnings, "[i]t would seem reasonable for the trial court to begin the maintenance evaluation with the proposition that the dependent partner may be entitled to 50 percent of the total earnings of both parties." *Bahr v. Bahr,* 107 Wis. 2d 72, 84–85, 318 N.W.2d 391 (1982). In the present case, the circuit court adjusted the amount downward and awarded Jean Hefty only twenty-nine percent of Thomas Hefty's base salary and twenty percent of his bonus income. In explaining the maintenance award, the circuit court stated, "[w]hile Tom's hard work and personal attributes were undoubtedly responsible for his success, it was Jean's homemaking and child care efforts as well as her willingness to make many moves that allowed Tom to take advantage of the opportunities that were presented to him and to devote substantially all of his time to his work." Considering that the circuit court awarded Jean Hefty substantially less than fifty percent of the combined earnings even though she made a substantial contribution to Thomas Hefty's career during the twenty-two year marriage, we conclude that the circuit court did not erroneously exercise its discretion when it awarded Jean Hefty maintenance in the amount of $5,000 per month plus twenty percent of Thomas Hefty's bonus income.

Thomas Hefty also argues that the circuit court failed to fully consider his obligation to contribute to civic and charitable organizations. The circuit court, however, specifically stated that the award "recognizes Tom's need for additional monies based upon the position he holds as the Chief Executive Officer of a major corporation." Since the circuit court, after recognizing Thomas Hefty's professional obligations, adjusted the award downward and awarded Jean Hefty substantially less than fifty percent of the combined earnings, we find no basis for his claim that the circuit abused its discretion by failing to consider his obligation to support civic and charitable organizations.

■

Additionally, Thomas Hefty argues that the circuit court abused its discretion when it awarded Jean Hefty maintenance for an indefinite period of time. He claims that the indefinite maintenance award constitutes a permanent annuity and fails to provide her with an incentive to find a job. While maintenance is not to be viewed as a permanent annuity, "such payment is designed to maintain a party at an appropriate standard of living, under the facts and circumstances of the individual case, until the party exercising reasonable diligence has reached a level of income where maintenance is no longer necessary." *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 230, 313 N.W.2d 813 (1982). In the present case, the circuit court decided that Jean Hefty needed an award of $60,000 per year plus twenty percent of Thomas Hefty's bonus income to provide her with an appropriate standard of living even if she earns $20,100 per year as a substitute teacher. Her age and inexperience, however, make it unlikely that she will ever earn enough money to support such a lifestyle. Since she will probably never reach a level of income where she can

137

afford to live the lifestyle that the circuit court deemed appropriate, we conclude that the circuit court did not erroneously exercise its discretion when it awarded maintenance for an indefinite period of time.

Although the maintenance award is indefinite, it is not necessarily permanent. Maintenance ceases at the death of either party or if Jean Hefty remarries. Furthermore, Thomas Hefty may seek an adjustment at any time he feels the circumstances warrant.

## B.

Thomas Hefty argues that the child support award of $1,500 per month is excessive because both parties share equally in the care and expense of the children and the parties received equal shares of the marital estate. Section 767.25, Stats. provides that a circuit court shall determine child support payments by using the percentage standard established by the Department of Health and Social Services unless the use of the percentage standard is unfair to the child or any of the parties. Under the percentage standard, Thomas Hefty would have had to pay over $8,800 per month (twenty-five percent of his income) in child support. The circuit court, however, stated that "Jean's ability to contribute to the children's support due to the sizeable maintenance and property division ordered herein and the award to Tom of substantial periods of physical placement are factors which support a deviation from the support standards established by the Department of Health and Social Services." The circuit court then reduced the amount downward and ordered Thomas to pay $3,300 per month. This figure represents $1,500 per month plus ten percent of his bonus income ($1,800 per month). Since the circuit court, after expressly considering Jean

Hefty's sizeable property award and the fact that Thomas Hefty will share in the care of the children, ordered Thomas Hefty to pay less than half of the child support required under the percentage standards, we conclude that the circuit court did not erroneously exercise its discretion when it ordered Thomas Hefty to pay child support in the amount of $1,500 per month plus ten percent of his bonus income.

## C.

Thomas Hefty claims that the circuit court abused its discretion by ordering him to pay combined child support and maintenance payments which comprise over one half of his net earnings. He notes that his net salary is $268,801.[4] He also notes that he must pay $142,800 in combined maintenance and child support.[5]

He, however, fails to note the tax implications of the maintenance payments, which are taxable to Jean Hefty and deductible by him. After she pays taxes on the maintenance received and he takes a deduction for the maintenance paid, he will end up with more disposable income than she will have. Furthermore, he will have even more disposable income when his child support obligation ceases in May, 1994, at which time the youngest child reaches the age of eighteen. Considering that we have already held that both the maintenance and the child support awards were not an erroneous exercise of the circuit court's discretion, we conclude the combined award, which provides Thomas with more disposable

[4] This figure represents $117,360 in net base salary plus $151,441 in net bonus income.

[5] This figure represents $64,800 (thirty percent of his bonus income) plus $78,000 in base maintenance and child support.

income than Jean, was not an erroneous exercise of discretion.

## III.

The third issue is did the circuit court err by refusing to consider Jean Hefty's alleged marital misconduct. Thomas Hefty argues that he should have been able to show, through evidence of her marital misconduct, that Jean Hefty was not committed to the marital partnership. This court, however, held that "the legislature did not intend to allow the circuit court to consider marital misconduct a relevant factor in granting maintenance . . .." *Dixon v. Dixon,* 107 Wis. 2d 492, 505, 319 N.W.2d 846 (1982). Although Thomas Hefty refers to *Dixon* as the general rule, *Dixon* is, in fact, the only rule in this area of the law. Since *Dixon* expressly prohibits a court from considering marital misconduct when awarding maintenance, we conclude that the circuit court correctly refused to consider evidence of Jean Hefty's alleged marital misconduct.

*By The Court.*—The decision of the circuit court is affirmed.

Justice WILLIAM A. BABLITCH, J., took no part.